IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HANCOCK WHITNEY BANK,** | ) |
| **Plaintiff,** | ) |
| vs. | ) CIVIL ACTION NO. 1:24-00143-KD-MU |
| **FLC LIVING, LLC,** *et al.*, | ) |
| **Defendants.** | ) |

**ORDER**

This action is before the Court on the Motion for Summary Judgment, (Doc. 13), filed by Plaintiff Hancock Whitney Bank ("Hancock Whitney") against Defendants FLC Living, LLC ("FLC Living"), Invinci Corporation ("Invinci"), MJO Properties, LLC ("MJO"), and Michael A. Harry ("Harry"); Harry's response, (Doc. 17); and Hancock Whitney's reply, (Doc. 19). Upon consideration, and for the reasons below, the motion is **granted in part**. Hancock Whitney is entitled to summary judgment against Harry for breach of contract.

**On or before October 31, 2024, Hancock Whitney shall file additional briefing on the amount due under the Note. On or before November 14, 2024, Harry shall file any objections to the requested attorney's fees and the addendum as to the amount owed on the Note.**

**I.    Findings of Fact**

The "facts," as accepted at the summary judgment stage, "may not be the actual facts of the case." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013). For the purposes of summary judgment, the undisputed facts follow:

In December 2022, FLC Living and Invinciplex, LLC[1] entered into a United States Small Business Administration Note ("Note") naming Hancock Whitney as the lender. (Doc. 1-1). The

---

[1] Invinciplex, LLC is a separate entity from Invinci Corporation. Invinciplex filed for Chapter 11 Bankruptcy on April 16, 2024. In re: Invinciplex, LLC, 24-10939 (Bankr. S.D. Ala. April 16, 2024). Invinciplex is not a party to this case.

1

principal balance of the Note was $1,350,000.00 with a variable interest rate based on Wall Street Journal Prime ("WSJP") + 2.50%, an initial rate of 9.50% adjusted every calendar quarter. (Doc. 1-1 at 2).

Invinci Corporation, Harry, and MJO signed unconditional limited guarantees ("Guarantees") of that Note. (Doc. 1-2). FLC Living also pledged a First Priority Mortgage, Assignment of Rents, Security Agreement and Fixture Filing ("Mortgage") as security for the Note. (Doc. 1-3). This Mortgage identified two parcels in Mobile County, Alabama:

> Parcel 1:
> Lot "C" of resubdivision of Lots 2 and 3 of Azalea Commercial Park West, according to a plat of thereof recorded in Map Book 39, Page 41 . . . .
>
> Parcel 2:
> Lot "W", Azalea Oaks subdivision, according to the plat thereof recorded in Map Book 41, Page 73 . . . .

(Doc. 1-3 at 20).

Beginning in January 2024, Invinciplex and FLC Living failed to make the monthly payments due under the Note. (Doc. 13-1 at 2 ¶ 5). On February 9, 2024, Hancock Whitney gave Invinciplex, LLC and FLC Living notice of default and demanded payment for all past due months. (Doc. 1-4).[2] On March 7, 2024, Hancock Whitney gave FLC Living, Invinciplex, MJO, Invinci, and Harry notice that—because of the defaults—the loan had been accelerated. (Doc. 1-5). Hancock Whitney also demanded payment of principal, interest, and collection costs. (Id.). On March 15, 2024, Hancock Whitney again demanded payment in full. (Doc. 1-6). As of April 16, 2024, the Note's principal balance was $1,345,347.66 and interest due was $58,082.75, exclusive of other fees and costs associated with collection. (Doc. 13-1 at 2 ¶ 6).

**A. Facts not cited in the motion**

"The court need consider only the cited materials, but it may consider other materials in the

---

[2] Despite Hancock Whitney's assertion in its statement of facts, it does not appear that the February 9, 2024, notice of default was given to "Invinci, F[L]C Living, MJO, and [Harry]." (Doc. 13 at 2). This demand letter does not address Invinci, MJO, or Harry. (Doc. 1-4). And the letter dated March 7, 2024, states: "By letters dated February 9, 2024, Hancock Whitney advised Borrowers FLC Living, LLC and Invinciplex, LLC ("Borrowers") of the defaults of their obligations . . . ." (Doc. 1-5 at 2–3).

record." Fed. R. Civ. P. 56. However, the following facts are pertinent to the motion for summary judgment:

> **1. The Guarantee makes all individuals and entities signing as Guarantor jointly and severally liable for all amounts owing under the Note**

Under the terms of the Guarantee, "all individuals and entities signing as Guarantor are jointly and severally liable." (Doc. 1-2 at 15). "Guarantor must pay all amounts owing under this Guarantee when Lender makes written demand upon Guarantor." (Id. at 12).

> **2. Upon default, Hancock Whitney is entitled to demand repayment reasonable attorney's fees and costs**

The Note contains a provision that allows Hancock Whitney to "[i]ncur expenses to collect amounts due under [the] Note, enforce the terms of [the] Note or any other Loan Document, and preserve or dispose of the Collateral." (Doc. 1-1 at 4). This provision also states that Hancock Whitney may "demand immediate repayment from Borrower" for "property tax, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs." (Id.).

The Guarantee contains a provision that states: "Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs." (Doc. 1-2 at 15).

> **3. Hancock Whitney was permitted to foreclose on real property secured by the Mortgage.**

On July 15, 2024, the Bankruptcy Court for the Southern District of Alabama issued an order granting Hancock Whitney's motion for relief from the automatic stay. (Doc. 19-6). This order permitted Hancock Whitney to "exercise its rights to foreclose and take possession" of real property owned by Invinciplex in Alabama that was secured by the First Priority Mortgage. (Id.).

> **4. Hancock Whitney's motion for default judgment**

On August 1, 2024, Hancock Whitney filed a motion for entry of default against FLC Living, MJO, and Invinci citing these Defendants' failures to plead or otherwise defend against the claim. (Doc. 20). On August 6, 2024, the Clerk entered default against FLC Living, Invinci, and MJO. (Doc. 21). On August 29, 2024, Hancock Whitney filed a motion for default judgment against FLC Living,

3

MJO, and Invinci. (Doc. 22). Hancock Whitney attached an affidavit of "a Vice President at Hancock Whitney" that attests to the default under the Note. (Doc. 22-1 at 3). This affidavit explains that a foreclosure sale was held for the real property secured by the Mortgage on August 7, 2024. (Id.). The affidavit shows that Hancock Whitney purchased the property for $1,075,000.00 and that, as of August 15, 2024, the Note's principal balance was $275,347.88 with interest due of $105,123.58. (Id.). The affidavit attests that the Note has accrued and continues to accrue interest at a per diem rate of $411.08 and that, to date, the Note has incurred late fees of $5,374.80 and appraisal and environmental fees of $4,850.00. (Id.). Therefore, as of August 29, 2024, the entire outstanding amount owed under the Note is $390,686.04. (Id.).

## II.    Stricken Pleadings

Upon a sua sponte review of the docket, the Court struck the answers filed by FLC Living, Invinci, and MJO. (Doc. 11). Hancock Whitney's motion for summary judgment relied on these stricken pleadings. (Doc. 13 at 3–6). After the motion for summary judgment was filed, the Court ordered Hancock Whitney to explain how the Court may properly rely on admissions from stricken pleadings when ruling on a motion for summary judgment. (Doc. 15). Hancock Whitney responded: "Though the stricken answers do not constitute judicial admissions, they are still documentary evidence useful at summary judgment." (Doc. 16 at 2). Hancock Whitney argued that the broad nature of evidence allowable at summary judgment warrants considering the stricken pleadings as ordinary evidence. (Doc. 16 at 4). "In candor," Hancock Whitney included a footnote conceding that "[w]hen a pleading previously has been stricken or superseded, the court may not consider it in passing on a motion for summary judgment." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2722 (4th ed. 2024). Therefore, the Court will not consider the stricken pleadings in passing on this motion for summary judgment.

## III.    Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome" of the case. Anderson v. Liberty Lobby, Inc., 477

4

U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists. Id.

The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011). The movant meets this burden by identifying affirmative evidence (pleadings, depositions, answers to interrogatories, admissions on file, etc.) to support its claim that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A). If the nonmovant bears the burden of persuasion at trial, the movant may also make a prima facie showing of summary judgment by demonstrating that the nonmovant's evidence is insufficient to establish an essential element of its claim. Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1057 (11th Cir. 2020); Fed. R. Civ. P. 56(c)(1)(B).

Hancock Whitney bears the burden of persuasion at trial. See Pizarro v. Home Depot, Inc., 111 F.4th 1165, 1174 (11th Cir. 2024) ("[T]he 'ordinary default rule' is 'that plaintiffs bear the burden of persuasion regarding the essential aspects of their claims.'") (quoting Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56–57 (2005)). Therefore, Hancock Whitney must identify affirmative evidence to support its claim for summary judgment.

If the movant meets its burden under Rule 56(c), summary judgment will be granted unless the nonmovant offers some competent evidence that could be presented at trial showing that there is a genuine dispute of material fact. Celotex, 477 U.S. at 324. If the movant met its burden by pointing "to specific portions of the record . . . to demonstrate that the nonmoving party cannot meet its burden of proof at trial," the nonmovant must "go beyond the pleadings" to designate specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." Anderson, 477 U.S. at 248. Instead, the court must "view

5

all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat, 658 F.3d at 1307. Thus, summary judgment is only proper when a movant shows that no reasonable jury could find for the nonmovant—even when the evidence and inferences are drawn in the nonmovant's favor.

### IV. Venue

Harry's answer and response to the motion for summary judgment contest venue in the Southern District of Alabama. (Doc. 8 at 1 ¶ 7; Doc. 17 at 1). Harry alleges that he is a permanent resident of Missouri. (Doc. 17 at 1). Harry also argues that Hancock Whitney's citation to Missouri law in its response to the order to show cause "establish[es] a foundation for denying venue" in Alabama. (Id.). Moreover, Harry argues that venue here is not proper when considering "judicial economy" and that venue in Alabama "may irreparably do harm to the active business entity operating as 'FLC Living, LLC' in the State of Alabama." (Id. at 2).

Hancock Whitney's reply addresses this argument by explaining that "[v]enue is proper in any 'judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .'" (Doc. 19 at 6) (quoting 28 U.S.C. § 1391(b)(2)). Hancock Whitney argues that "[Harry] directed FLC Living's activities, and FLC Living defaulted on the Note in the Southern District of Alabama." (Id.). Further, Hancock Whitney argues that FLC Living's principal address was in the Southern District of Alabama, and that FLC Living advertises apartments here. (Id.). In sum, Hancock Whitney argues that venue is proper, and Harry has not shown that a transfer is justified. (Id. at 6–11).

Hancock Whitney has established that "a substantial part of the events or omissions giving rise" to Hancock Whitney's claims occurred in the Southern District of Alabama. 28 U.S.C. § 1391(b). Thus, venue is proper under 28 U.S.C. § 1391(b).

Harry's arguments are not sufficient to warrant a transfer. "Venue is largely a matter of litigational convenience." Wachovia Bank v. Schmidt, 546 U.S. 303, 316 (2006). As such, a district

court may transfer a case "[f]or the convenience of parties and witnesses, and in the interest of justice." 28 U.S.C. § 1404(a). "[I]f venue is proper, the plaintiff's choice of forum is entitled to some deference, and transfer to another district under 28 U.S.C.A. § 1404(a) will be ordered only if the defendant demonstrates that the convenience of the parties and the witnesses, and the interest of justice, strongly favor transfer." Wright & Miller, supra, § 3801.

Harry's argument that he is a Missouri citizen does not outweigh Hancock Whitney's chosen forum. The witnesses that Hancock Whitney will likely call are in the Southern District of Alabama. (Doc. 19 at 9). The relevant documents are, for the most part, in the forum. (Id.). Hancock Whitney made the loan in the forum. (Id.). Harry signed the mortgage, and presumably the Note and Guarantees in the forum. (Id.). Therefore, Harry's alleged inconvenience in litigating in the forum does not strongly favor transfer.

Likewise, Hancock Whitney's citation of Missouri law in its response to the order to show cause does not strongly favor transfer to Missouri. And Harry's concerns of judicial economy and the harm to another business named FLC Living, LLC are not sufficient to justify transfer. Thus, venue is proper in the Southern District of Alabama, and Hancock Whitney's chosen forum is not disturbed by Harry's arguments.

**V.     Analysis**

Hancock Whitney's motion for summary judgment starts with the premise that summary judgment is proper without discovery because "Harry, F[L]C Living, MJO, and Invinci admit the majority of Hancock Whitney's allegations." (Doc. 13 at 3). In support, Hancock Whitney cites caselaw explaining that judicial admissions in answers are binding, Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1178 (11th Cir. 2009), and allow for summary judgment when they withdraw a fact from issue. Reliable Contracting Grp., LLC v. Dep't of Veterans Affs., 779 F.3d 1329, 1334 (Fed. Cir. 2015).

To start, the answers from FLC Living, MJO, and Invinci were stricken. (Doc. 11). Hancock

Whitney has conceded these "stricken pleadings aren't judicial admissions," (Doc. 16 at 4), and that "the court may not consider [stricken pleadings] in passing on a motion for summary judgment." Wright & Miller, supra, § 2722. Therefore, Hancock Whitney cannot rely on these stricken pleadings in its motion. Hancock Whitney has since filed a motion for default judgment against FLC Living, MJO, and Invinci. (Doc. 22).

Courts may not grant summary judgment solely because the motion is unopposed. See Fed. R. Civ. P. 56(e) advisory committee's note (2010) ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion."). Thus, summary judgment against FLC Living, MJO, and Invinci is **denied**. The Court will address the motion for default judgment against these parties in a separate order.

Harry, on the other hand, filed an answer and responded to the motion for summary judgment. (Docs. 8, 17). Harry's answer is a binding judicial admission. (Doc. 8). Therefore, the Court will analyze whether summary judgment against Harry is proper.

### A. Choice of law

Hancock Whitney argues that summary judgment is proper on its breach of contract claims under Alabama law. (Doc. 13 at 3). Hancock Whitney argues that Alabama law applies because a "district court deciding a state law claim will apply the law of the state in which it sits, including that state's choice-of-law rules." (Doc. 13 at 3) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). As the forum, Alabama's choice-of-law rules apply.

Alabama follows the principle of *lex loci contractus* to apply the law of the state where the contract was made. Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991); see First Restatement of Contracts § 311 Comment d ("Under its Conflict of Laws rules, in determining the place of contracting, the forum ascertains the place in which, under the general law of Contracts, the principal event necessary to make a contract occurs.").

Hancock Whitney argues that Alabama substantive law applies because Harry "signed the Note and the unconditional [guarantees] on the same day that he signed the Mortgage in front of an Alabama notary public." (Doc. 13 at 3 n.2) (comparing the Complaint with Answers). Also, Hancock Whitney argues that "each of the defendants admit that the parties made the Note in Mobile,

8

Alabama." (Id.). Although it does not appear that Harry made the admission alleged by Hancock Whitney, the Mortgage was signed before an Alabama notary public on the same day the Note and the Guarantees were signed. (Doc. 1-1 (Note); Doc. 1-2 (Guarantees); Doc. 1-3 at 18 (Mortgage)). Thus, Alabama appears to be the state where the contract was made, and Alabama substantive law applies.

### B. Breach of Contract

Hancock Whitney's motion for summary judgment makes one claim: breach of contract. (Doc. 13). "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Dupree v. PeoplesSouth Bank, 308 So. 3d 484, 490 (Ala. 2020) (quoting Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009)). Hancock Whitney argues that all four elements are satisfied. (Doc. 13). Harry summarily disputes the allegation of a breach of contract and breach of guarantee. (Doc. 17 at 2). The question is whether the elements of breach of contract are satisfied based facts that cannot reasonably be disputed.

#### 1. A valid contract binding the parties

Hancock Whitney argues that the Note and Guarantees are valid and enforceable contracts. (Doc. 13 at 4). To support this claim, Hancock Whitney cites the admissions—that FLC Living signed the Note and that a true and correct copy of the Note is attached to the complaint—in the answers of FLC Living, Harry, Invinci, and MJO. (Doc. 13 at 4) (citing Docs. 7–10). Hancock Whitney cites the same answers in arguing that the Defendants admit that Invinci, Harry, and MJO signed unconditional guarantees. (Doc. 13 at 4) (citing Docs. 7–10). Because the answers of FLC Living, Invinci, and MJO were stricken, the Court will not rely on the admissions in those answers. But the admission of Harry is binding on Harry.

Harry did not deny that Hancock Whitney attached true and correct copy of the Note. (Doc. 8 at 1 ¶ 8). Therefore, this fact is considered admitted. See Fed. R. Civ. P. 8(b)(4), (6). Hancock Whitney also attached an affidavit—based on the personal knowledge of Hancock Whitney's vice president—attesting that FLC Living and Invinciplex executed a Note in favor of Hancock Whitney in the principal amount of $1,350,000.00. (Doc. 13-1 at 1). Thus, Hancock Whitney has provided

9

affirmative evidence showing that FLC Living and Invinciplex entered into a valid contract binding the parties. See Fed. R. Civ. P. 56(c)(1)(A).

Harry admitted that "[t]he guarantees executed by Invinci Corporation and Michael A. Harry included the performance guarantee of two co-borrowers, Invinciplex, LLC and FLC Living, LLC." (Doc. 8 at 1 ¶ 9). Therefore, it is undisputed that Harry executed a guarantee on the Note. (Doc. 1-2). Clearly, there was a valid contract binding Hancock Whitney and Harry. This element is established by Hancock Whitney.

### 2. Plaintiff's performance under the contract

Hancock Whitney argues that "[t]he Note placed a single duty on Hancock Whitney: Advance FLC Living and Invinciplex $1,350,000.00." (Doc. 13 at 4) (citing Doc. 1-1). Hancock Whitney states that it "did just that." (Doc. 13 at 4). Yet Hancock Whitney's motion cites no affirmative evidence supporting this proposition. Still, the record contains two affidavits that show that the Note was executed. (Docs. 13-1, 22-1). And the Bankruptcy Court for the Southern District of Alabama issued an order allowing Hancock Whitney to foreclose on the property securing the Note. (Doc. 19-6). Moreover, Harry's answer admits that FLC Living executed the Note as a co-borrower with Invinciplex. (Doc. 8 at 1 ¶ 8).

Harry's unsupported denial that Hancock Whitney fully performed its obligations under the Note, (Doc. 8 at 2 ¶ 19), is not sufficient to dispute the fact that Hancock Whitney performed its obligation under the contract to advance the funds to FLC Living and Invinciplex. There is no genuine dispute that this element is established.

### 3. Harry's nonperformance

Hancock Whitney argues that FLC Living breached its duties under the Note by failing to make the required payments on the first of each month, and then by failing to pay the Note off after acceleration. (Doc. 13 at 5) (citing Doc. 1-1). Hancock Whitney identifies the admissions from the Defendants' answers and the affidavit from Hancock Whitney's vice president. (Doc. 13 at 5) (citing Docs. 7–10, 13-1 at 2 ¶ 5). Hancock Whitney argues that Invinci, MJO, and Harry breached their duties by failing to "pay all amounts due under the Note when Lender makes written demand upon Guarantor." (Doc. 13 at 5) (quoting Doc. 1-2 at 2, 17, 12). Hancock Whitney cites to the admissions

of the Defendants that Hancock Whitney made a written demand on them for the entire amount of indebtedness. (Doc. 13 at 6) (citing Docs. 1, 7–10).

The record shows that Hancock Whitney sent payment demands to all Defendants. (Docs. 1-6, 1-6). The record also shows that Hancock Whitney "has not received payments due under the Note for January, February, March, April, May, June, July, or August of 2024." (Doc. 22-1). There is no evidence to the contrary. Thus, no reasonable jury could find that Harry has performed his obligations under the Guarantee. This element is established by Hancock Whitney.

### 4. Resulting damages

Hancock Whitney's motion for summary judgment argues that it is "due money from FLC Living, MJO, Invinci, and Harry." (Doc. 13 at 6). Based on the record, the Defendants still owe $390,636.40 plus $411.08 per diem from August 15, 2024. (Doc. 22-1 at 3). Thus, Hancock Whitney has established that they have incurred damages because of the breach. There is no evidence to the contrary.

### C. Relief

Hancock Whitney asks the Court to enter a judgment "against the defendants, jointly and severally, for $1,345,347.66 in principal, $58,082.75 in prejudgment interest to April 16, 2024, prejudgment interest from April 16 equal to the Wall Street Journal Prime Rate plus 2.5%, and Hancock Whitney's costs of collection, including a reasonable attorneys' fee." (Doc. 13 at 6). However, the record shows that there is a lesser amount owed under the Note after the foreclosure sale.

### 1. The amount due under the Note is not clear.

"The amount of damages in a breach-of-contract action is generally the 'sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.'" Dupree, 308 So. 3d at 491 (quoting Ex parte Steadman, 812 So. 2d 290, 295 (Ala. 2001)). Harry summarily disputes the amount owed under the Note without any support. (Doc. 17 at 2). However, based on Hancock Whitney's motion for default judgment against FLC Living, MJO, and Invinci, it appears the amount owed under the Note is now "$390,696.40". However Hancock Whitney also alleges in addition that a per diem is owed: "plus $411.08 per day from August 15, 2024

11

until the date of judgment." (Doc. 22 at 1). An affidavit attached to that motion shows that a foreclosure sale was held for the real property secured by the Mortgage on August 7, 2024, and Hancock Whitney was the highest bidder at the purchase price of $1,075,000.00. (Doc. 22-1 at 3). The affidavit provides that as of August 15, 2024, the Note's principal balance was $275,347.66 with interest due of $105,123.58 and interest accruing per diem at $411.08. (Doc. 22-1 at 3). In sum, there is still $390,636.40 plus allegedly $411.08 per diem from August 15, 2024, owed to Hancock Whitney. (Doc. 22-1 at 3).

Clearly, less is owed under the Note than when Hancock Whitney filed its motion for summary judgment as the property has been sold as indicated. However, there are still two issues that need clarification. First, Hancock Whitney alleges that as of April 16, 2024, the Note's principal balance was $1,345,347.66 and interest due was $58,082.75, exclusive of other fees and costs associated with collection. (Doc. 13-1 at 2 ¶ 6). Yet four months later, the interest allegedly due has increased to $105,123.58. (Doc. 22-1 at 3). The Court need clarification as to how the increase was calculated.

Also, it is not clear how Hancock Whitney arrived at the $411.08 per diem interest rate. The Note does not indicate that this amount is owed in interest. (Doc. 1-2). Moreover, it is not clear how the interest rate did not decrease after the principal owed decreased from $1,345,347.66 to $275,347.66. (Compare Doc. 13-1 with Doc. 22-1).

Hancock Whitney has met its burden of proving that Harry breached his contract, but Hancock Whitney has not sufficiently proved the amount owed under the Note. Hancock Whitney shall provide additional briefing explaining the amount due under the Note, including how the interest rate and per diem is calculated, **within fourteen (14) days of this order (October 31, 2024).**

**2. The costs of collection including reasonable attorneys' fees appear reasonable.**

"[A]ttorney fees may be recovered if they are provided for by statute or by contract." Jones v. Regions Bank, 25 So. 3d 427, 441 (Ala. 2009). But "Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation." Willow Lake Residential Ass'n, Inc. v. Juliano, 80 So. 3d 226, 241 (Ala. Civ. App. 2010). Therefore, "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court." Ex parte

12

Edwards, 601 So. 2d 82, 85 (Ala. 1992).

The Court's power to tax costs is found in Rule 54(d)(1): "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The costs generally taxable under Rule 54(d) include filing fees, service fees, deposition expenses, copying charges, witness fees, interpreters' fees, and fees for court-appointed experts. 28 U.S.C.A. § 1920; 28 U.S.C.A. § 1821. "Although 'costs' has an everyday meaning synonymous with 'expenses,' the concept of taxable costs under Rule 54(d) is more limited." Wright & Miller, supra, § 2666 (4th ed. 2024). Expenses, sometimes referred to as costs, "include all the expenditures actually made by a litigant in connection with the lawsuit." Id.

In the motion for summary judgment, Hancock Whitney fails to cite why it is entitled to attorneys' fees or the amount requested. But the record shows that the Note contains a provision that allows Hancock Whitney to demand repayment for "property tax, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs." (Doc. 1-1 at 4). The Guarantee signed by Harry also contains a provision on expenses incurred "to enforce [the] Guarantee, including attorney's fees and costs." (Doc. 1-2 at 15). Therefore, Hancock Whitney is entitlement to enforcement costs. The record also shows a requested amount for attorney's fees in the motion for default against FLC Living, MJO, and Invinci. (Doc. 22). These companies are jointly and severally liable with Harry for the amount under the Note and enforcement expenses. The affidavit attached to the motion for default contains evidence in support of the requested fees. (Doc. 22-1).

To determine the reasonableness of attorneys' fees requests, courts apply the "lodestar" method to obtain an objective estimate of the value of the attorney's services. Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate. Dillard v. City of Greensboro, 213 F.3d 1347, 1354 (11th Cir. 2000). A reasonable hourly rate is the "prevailing market

13

rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. In this case, the relevant legal community is Mobile, Alabama. See American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (explaining that the relevant legal community is generally the place where the case is filed).

The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). "It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." Id.

The court may utilize its own "knowledge and expertise" to come to an independent judgment regarding the reasonableness of requested attorney's fees. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). "Although a district court has wide discretion in performing these calculations, . . . "[t]he court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Id. (citations omitted).

Here, the evidence is facially sufficient to support the requested attorneys' fees. The affidavit concerning the reasonableness of the attorneys' fees is from a Vice President of Hancock Whitney. (Doc. 22-1). The affidavit reflects the amount of hours worked by the attorneys and the legal paralegal and their respective rates. (Doc. 22-1 at 2). The affiant swears that he regularly engages in the types of services as reflected, and the associated costs are reasonable. (Doc. 22-1 at 4). The affiant swears that he has reviewed the time spent and rates charged for these matters by counsel, and finds them

14

reasonable and normal for Mobile, Alabama. (Id.). Therefore, Hancock Whitney has met its burden of establishing the reasonableness of the attorneys' fees via specific evidence supporting the hours and rates claimed. See Hensley, 461 U.S. at 433. Hancock Whitney plausibly shows entitlement to attorneys' fees and expenses in the amount of $28,476.00. (Doc. 22-1 at 2).

**However, Harry has not had an opportunity to object to the amount of attorney fees requested. Any objection by Harry to the amount requested should be filed by November 14, 2024. Harry should also file any objection to Hancock Whitney's addendum explaining how interest was calculated.**

### D. Conclusion

Summary judgment is **granted in part**. Hancock Whitney is entitled to summary judgment against Harry for breach of contract. Summary judgment against FLC Living, MJO, and Invinci is **denied**. Hancock Whitney's claim for breach of contract against these three Defendants, will be addressed in the order on default judgment.

Hancock Whitney is **ordered** to file additional briefing on the amount due under the Note **on or before October 31, 2024**. In this briefing, Hancock Whitney shall explain how the interest rate is calculated, how the rate was affected by the reduction in the principal amount, and why the interest owed doubled in four months.

Harry shall file any objections to the attorney's fees requested and Hancock Whitney's addendum on interest **on or before November 14, 2024**.

**DONE** and **ORDERED** this **17th** day of **October 2024**.

                                      **/s / Kristi K. DuBose**
                                      **KRISTI K. DuBOSE**
                                      **UNITED STATES DISTRICT JUDGE**