IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HANCOCK WHITNEY BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 1:24-00143-KD-MU |
| | ) |
| **FLC LIVING, LLC,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This action is before the Court on the Motion for Default Judgment, (Doc. 22), filed by Plaintiff Hancock Whitney Bank ("Hancock Whitney") against Defendants FLC Living, LLC ("FLC Living"), Invinci Corporation ("Invinci"), and MJO Properties, LLC ("MJO"); Declaration in Support (Doc. 22-1); the Supplement to the Motion for Summary Judgment (Doc. 25); and Supplemental Declaration in Support (Doc. 25-1). Upon consideration, and for the reasons below, the Motion for Default Judgment is **GRANTED.**

**I.   Background**

In December 2022, FLC Living and Invinciplex, LLC[1] entered into a United States Small Business Administration Note ("Note") naming Hancock Whitney as the lender. (Doc. 1-1). The principal balance of the Note was $1,350,000.00 with a variable interest rate based on Wall Street Journal Prime ("WSJP") + 2.50%, an initial rate of 9.50% adjusted every calendar quarter. (Doc. 1-1 at 2).

Invinci Corporation, Michael A. Harry ("Harry"), and MJO signed unconditional limited guarantees of that Note. (Doc. 1-2). FLC Living also pledged a First Priority Mortgage,

---

[1] Invinciplex, LLC is a separate entity from Invinci Corporation. Invinciplex filed for Chapter 11 Bankruptcy on April 16, 2024. In re: Invinciplex, LLC, 24-10939 (Bankr. S.D. Ala. April 16, 2024). Invinciplex is not a party to this case.

1

Assignment of Rents, Security Agreement and Fixture Filing ("Mortgage") as security for the Note. (Doc. 1-3). This Mortgage identified two parcels in Mobile County, Alabama:

> Parcel 1:
>
> Lot "C" of resubdivision of Lots 2 and 3 of Azalea Commercial Park West, according to a plat of thereof recorded in Map Book 39, Page 41 . . . .
>
> Parcel 2:
>
> Lot "W", Azalea Oaks subdivision, according to the plat thereof recorded in Map Book 41, Page 73 . . . .

(Doc. 1-3 at 20).

Beginning in January 2024, Invinciplex and FLC Living failed to make the monthly payments due under the Note. (Doc. 13-1 at 2 ¶ 5). On February 9, 2024, Hancock Whitney gave Invinciplex, LLC and FLC Living notice of default and demanded payment for all past due months. (Doc. 1-4). On March 7, 2024, Hancock Whitney gave FLC Living, Invinciplex, MJO, Invinci, and Harry notice that—because of the defaults—the loan had been accelerated. (Doc. 1-5). Hancock Whitney also demanded payment of principal, interest, and collection costs. (Id.). On March 15, 2024, Hancock Whitney again demanded payment in full. (Doc. 1-6). As of April 16, 2024, the Note's principal balance was $1,345,347.66 and interest due was $58,082.75, exclusive of other fees and costs associated with collection. (Doc. 13-1 at 2 ¶ 6).

On June 12, 2024, summonses were returned executed upon Defendants FLC Living, Invinci, and MJO. (Docs. 3, 4, 6). Answers were due from these Defendants by June 18, 2024. These Defendants answered the Complaint on June 12, 2024, (Docs. 7, 9, 10), but these answers were stricken by a Court order because only licensed counsel may represent a corporation or LLC. (Doc. 11). The order warned that "failure to obtain licensed counsel to appear and defend this action may result in the entry of default and the entry of a judgment by default." (Id. at 2). The Clerk was directed to mail a copy of that order to FLC Living, Invinci, and MJO. (Id.).

On July 15, 2024, the Bankruptcy Court for the Southern District of Alabama issued an order granting Hancock Whitney's motion for relief from the automatic stay. (Doc. 19-6). This

order permitted Hancock Whitney to "exercise its rights to foreclose and take possession" of real property owned by Invinciplex in Alabama that was secured by the First Priority Mortgage. (Id.).

On August 1, 2024, Hancock Whitney filed a motion for entry of default against FLC Living, MJO, and Invinci citing these Defendants' failures to plead or otherwise defend against the claim. (Doc. 20). On August 6, 2024, the Clerk entered default against FLC Living, Invinci, and MJO. (Doc. 21).

The foreclosure sale was held August 7, 2024, for the real property secured by the Mortgage (Doc. 25-1 at 3, Sander Supplemental Declaration). Hancock Whitney purchased the property for $1,070,000.00 (Id). At that time, the principal balance was $1,345,347.00 plus accrued interest of $103,898.29. After deduction of collections costs, accrued late fees, and accrued interest, the principal balance was $419,659.68 (Id.).

On August 29, 2024, Hancock Whitney filed a motion for default judgment against FLC Living, MJO, and Invinci. (Doc. 22). Hancock Whitney attached the Declaration of Eric K. Sander, "a Vice President at Hancock Whitney" who attests to the default under the Note. (Doc. 22-1 at 3).

The Note contains a provision that allows Hancock Whitney to "[i]ncur expenses to collect amounts due under [the] Note, enforce the terms of [the] Note or any other Loan Document, and preserve or dispose of the Collateral." (Doc. 1-1 at 4). This provision also states that Hancock Whitney may "demand immediate repayment from Borrower" for "property tax, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs." (Id.).

The Guarantee contains a provision that states: "Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs." (Doc. 1-2 at 15). Under the terms of the Guarantee, "all individuals and entities signing as Guarantor are jointly and severally liable." (Id. at 15). "Guarantor must pay all amounts owing under this Guarantee when Lender makes written demand upon Guarantor." (Id. at 12).

**II.    Statement of the Law**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). To obtain a default judgment for a claim that is not "for a sum certain," the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Therefore, "[t]here are two steps in the default process: (1) getting the clerk to make an entry of default; and then (2) obtaining judgment on the default." 2 Steven S. Gensler, Rule 55, Federal Rules of Civil Procedure, Rules and Commentary (2024).

However, the Eleventh Circuit has a "strong policy of determining cases on their merits." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015). Thus, "default judgments are generally disfavored." Id. at 1245. Still, the default mechanism is necessary "so that 'the adversary process [will not be] halted because of an essentially unresponsive party.'" Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 (11th Cir. 2014) (alteration in original) (quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)). Therefore, a default judgment is "warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Surtain, 789 F.3d at 1245 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Finally, a default judgment may not be entered against minors or incompetent persons unless they are represented in the action by a guardian or an appropriate representative. Fed. R. Civ. P. 55(b)(2). And to ensure the validity of a default judgment, the court must determine its jurisdiction both over the subject matter and the parties. See Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).

**III.    Jurisdiction**

**A.  Subject matter jurisdiction**

4

For federal diversity jurisdiction to attach, opposing parties must have completely diverse citizenship and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). A corporation is a citizen of its state(s) of incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1). A person is a citizen of the state in which he is domiciled—the state of his home and where he intends to remain. McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002).[2] "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003). The party invoking federal jurisdiction bears the burden of establishing facts supporting its existence by a preponderance of the evidence. Osting-Schwinn, 613 F.3d at 1085.

Here, Hancock Whitney has met its burden of establishing diversity jurisdiction. (Doc. 1). Hancock Whitney properly alleged that it is citizen of Mississippi because it is a Mississippi corporation with its principal place of business in Mississippi. (Doc. 1 at 1). Hancock Whitney properly alleged that Invinci is a Missouri citizen because it is a Missouri corporation with its principal place of business in Missouri. (Id. at 2). Hancock Whitney properly alleged that Defendants FLC Living and MJO are citizens of Missouri because, upon information and belief, all members of FLC Living and MJO are citizens of Missouri. (Id.). And Hancock Whitney provides a good-faith allegation that the amount in controversy exceeds $75,000.00. (Id.). Therefore, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### B. Personal jurisdiction

"Personal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process." Prewitt

---

[2] "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994).

Enters., Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 925 n.15 (11th Cir. 2003). The district court lacks personal jurisdiction over a defendant who has not been properly served. Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990); Fuqua v. Turner, 996 F.3d 1140, 1154 (11th Cir. 2021) ("Proper service of process is a jurisdictional prerequisite."). "Generally, where service of process is insufficient, the court has no power to render judgment[,] and the judgment is void." In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1299 (11th Cir. 2003). Also, "[u]nless service is waived, proof of service must be made to the court" and absent service by the U.S. Marshal or a deputy marshal, "proof must be by the server's affidavit." Fed. R. Civ. P. 4(*l*)(1). Under Alabama law, the completion and filing of a return of service constitutes prima facie evidence of that service. Hooie v. Barksdale, 93 So. 3d 942, 945 (Ala. Civ. App. 2012).

Rule 4(h) governs service on domestic corporations, partnerships, and any other unincorporated associations subject to suit in a common name. Fed. R. Civ. P. 4(h). "Unless federal law provides otherwise" a domestic corporation or unincorporated association that is subject to suit under a common name must be served:

> (1) in a judicial district of the United States:
>
> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(h)(1). "The general rule is that a managing or general agent is someone authorized to transact all business of a particular kind at a particular place and who is 'vested with powers of discretion rather than being under direct superior control.'" 1 Steven S. Gensler, Rule 4, Federal Rules of Civil Procedure, Rules and Commentary (2024). Under Alabama law, a

registered agent "is an agent of the entity on which may be served any process, notice, or demand required or permitted by law to be served on the entity." Ala. Code § 10A-1-5.31(b)(1) (2024).

Here, Hancock Whitney asserts that process was properly served because Michael A. Harry was personally served process in the State of Alabama. (Docs. 7, 9, 10). On filings, Harry is listed as the Executive Director or Member or President of FLC Living, the President of Invinci, and a Managing Member of MJO. (Doc. 1-1 at 7; Doc. 1-2 at 6, 17; Doc. 1-3; Doc. 11). Harry also signed the Note, Guarantees, and Mortgage on behalf of the Defendant companies. (Doc. 1-1–3). Thus, Harry is apparently authorized to transact on behalf of the companies as a managing agent. Furthermore, a search of the Missouri Secretary of State website shows that Harry is the registered agent for FLC Living, Invinci, and MJO. Missouri Online Business Filing, https://bsd.sos.mo.gov/BusinessEntity/BESearch.aspx?SearchType=0 (search "FLC Living" "Invinci Corporation" "MJO Properties") (last visited Oct. 2, 2024). A search of the Alabama Secretary of State website shows that Harry is the registered agent for Invinci. Business Entity Records—Invinci Corporation, Alabama Secretary of State, https://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=001053677&page=name&file=&type=ALL&status=ALL&place=ALL&city= (last visited October 3, 2024). FLC Living's registered agent is Invinci Corporation. Id. at https://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=001053798&page=name&file=&type=ALL&status=ALL&place=ALL&city= (last visited October 3, 2024). For purpose of service, Harry is an agent—whether managing or authorized—of the three Defendant companies. Hancock Whitney submitted a copy of the executed service of process that was personally delivered to Harry. Therefore, service on the Defendant companies was proper.

Under the Rule 4(k)(1)(A), "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In other words, the Courts asks whether the defendant would be subject to personal jurisdiction in the state where the federal court sits. See Walden v. Fiore, 571 U.S. 277, 283 (2014) ("[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located.'"). A state's personal jurisdiction analysis depends on (1) whether the state could effectively serve process on the defendant via a long-arm statute and (2) whether service on that defendant would comport with the Due Process Clause of the Fourteenth Amendment. See id.

Alabama's long-arm statute provides that Alabama courts have personal jurisdiction over defendants "when the person or entity has such contacts" with the state that the prosecution of the action in Alabama is not inconsistent with the Alabama or United States Constitution. Ala. R. Civ. P. 4.2(b). Thus, the Court need only consider whether its exercise of personal jurisdiction over the Defendants comports with the Due Process Clause.

Due process is satisfied when the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). For a corporate defendant, general jurisdiction exists in its state(s) of incorporation and its principal place of business. Ford Motor Co. v. Montana Eighth

Jud. Dist. Ct., 592 U.S. 351, 359 (2021).[3] Specific jurisdiction, on the other hand, permits suits that "'arise out of or relate to the defendant's contacts' with the forum." Id. at 359 (quoting Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty., 582 U.S. 255, 262 (2017)). This is often called purposeful availment: the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" Id. (alteration in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). An example of purposeful availment to a state is "entering a contractual relationship centered there." Id.

Here, the Defendants entered into a contractual relationship centered in Alabama. The Note and the Guarantees were signed by Harry the same day that Harry signed the Mortgage in Mobile County, Alabama. (Doc. 1-1; Doc. 1-2; Doc. 1-3 at 19). The only two parcels listed in the Mortgage are in Mobile County, Alabama. (Doc. 1-3 at 20). The suit for breach of contract against the Defendants relates to the Defendants' contacts with the forum. Therefore, this Court has personal jurisdiction to grant a default judgment in this case.

In sum, the Defendants were served in compliance with the federal rules and Alabama law. The jurisdictional requirements for a default judgment are present.

**IV.   Analysis**

Hancock Whitney requests that the Clerk of Court enter a default judgment of $390,696.40 plus $411.08 per day from August 15, 2024, until the date of judgment against Defendants FLC Living, MJO, and Invinci. (Doc. 22). Hancock Whitney also requests that the Court award

---

[3] State consent-by-registration statutes also comport with the Due Process Clause. Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 134 (2023). No such statute is present here.

attorney's fees and costs of $30,568.43 as permitted by the Guarantees. (Id.).

Generally, when one of multiple defendants who is allegedly jointly liable defaults, "judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2690 (4th ed. 2024). FLC Living, Invinci, and MJO are allegedly jointly liable, along with Harry, for the breach of contract. (Doc. 1-1; Doc, 13 at 6). The Court granted summary judgment against Harry on Hancock Whitney's breach of contract claim. (Doc. 24). Now, it is proper to proceed with a default judgment claim against the other Defendants jointly and severally liable.

FLC Living, Invinci, and MJO attempted to file an answer through Harry, but failed to properly retain counsel and file an answer. (Doc. 11). "Default under Rule 55 has been extended to many situations where a party demonstrates an intent to defend but ultimately fails to properly appear and answer. For example, a party who answers but fails to properly retain counsel may have a default judgment entered against it." 2 Steven S. Gensler, Rule 55, Federal Rules of Civil Procedure, Rules and Commentary (2024). Thus, the three Defendant companies have ultimately failed to appear and answer.

The standard for determining whether there is a "sufficient basis" for default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain, 789 F.3d at 1245. Under this standard, the court looks to see whether the complaint contains sufficient facts, "accepted as true, to state a claim for relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A default judgment is warranted "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Importantly, a defaulted defendant is deemed

only to admit the plaintiff's well-pleaded allegations of fact—not unsupported facts or conclusions of law. Id.

### A. Breach of Contract

Here, Hancock Whitney's complaint alleges breach of contract for FLC Living's default under the Note and breach of contract for the failures of Invinci, MJO, and Harry under the Guarantees. (Doc. 1 at 4, 5). "Alabama law firmly embraces the concept of freedom of contract" such that "[c]ontracts between competent parties, voluntarily and fairly made, are valid and enforceable." Berkel and Co. Contractors, Inc. v. Providence Hosp., 454 So. 2d 496, 505 (Ala. 1984). The elements for a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendants' nonperformance; and (4) resulting damages. Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105 (Ala. 2002). "The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 673 (Ala. 2001); see also Shirley v. Lin, 548 So. 2d 1329, 1332 (Ala. 1989) ("The essential elements of a contract are as follows: an agreement, consideration, two or more contracting parties, a legal object, and capacity.").

Hancock Whitney's complaint plausibly states a breach-of-contract claim against the Defendants under Alabama law. Hancock Whitney alleges that it advanced a loan to FLC Living, (Doc. 1 at 2, 3); that FLC Living executed a Promissory Note in favor of Hancock Whitney, (Doc. 1 at 3); and that Invinci, MJO, and Harry executed and delivered to Hancock Whitney commercial guarantees securing payment of the Note. (Doc. 1 at 3). Hancock Whitney alleges that FLC Living defaulted under the Note by failing to make payments when due, (Doc. 1 at 3), and that Invinci, MJO, and Harry failed to make the demanded payments under the Guarantee.

(Doc. 1 at 4). In sum, Hancock Whitney plausibly alleges that "FLC Living has breached the terms of the Note," (Doc. 1 at 4), and that "Invinci, MJO Properties, and Harry have each individually breached the terms of their Guarantees." (Doc. 1 at 5). Therefore, Hancock Whitney is entitled to default judgment against FLC Living, Invinci, and MJO.

    **B.**    **Attorneys' Fees, Costs, and Expenses**

Hancock Whitney alleges that it is entitled to recovery of its attorneys' fees, costs, and expenses pursuant to the terms of the Note and Guarantees. (Docs. 1, 1-1, 1-2). Hancock Whitney attached the Note to the complaint, which contains a provision regarding attorneys' fees and expenses. (Doc. 1-1 at 4). Hancock Whitney also attached the Guarantees, which contain a provision regarding attorneys' fees and expenses. (Doc. 1-2 at 15). The Note and the Guarantees are contracts that require the Defendants to pay Hancock Whitney's attorneys' fees and legal expenses incurred in connection with the enforcement of the Note and Guarantees.

"In Alabama, attorneys' fees are recoverable when provided for in a contract, see. e.g., James v. James, 768 So.2d 356, 360 (Ala. 2000), as is the case here, and in the Eleventh Circuit, 'a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue.'" Hancock Whitney Bank v. Mason, No. CV:20-10-KD-C, 2020 WL 3442840, at *8 (S.D. Ala. May 26, 2020), report and recommendation adopted, No. CV 20-00010-KD-C, 2020 WL 3440939 (S.D. Ala. June 23, 2020) (quoting Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 312 F.3d 1349, 1355 (2002), abrogated as stated in Ray Haluch Gravel Co. v. Central Pension Fund of International Union of Operating Engineers and Participating Employers, 571 U.S. 177, 134 S.Ct. 773, 187 L.Ed.2d 669 (2014). Additionally, costs may be recovered when the contract provide for recovery of costs of collection. Hancock Whitney Bank, 2020 WL 3442840, at *10 (awarding reasonable costs and expenses incurred).

12

Therefore, Hancock Whitney has established its entitlement to attorneys' fees, costs, and expenses stemming from this litigation.

In the Motion for Default Judgment, Hancock Whitney asked for an award of attorney's fees and costs in the amount of $30,568.43 (Doc. 22). However, in the Supplement to the Motion for Summary Judgment, Hancock Whitney states that it reimbursed itself for $30,188.93 of its attorney's fees and costs, from the foreclosure proceeds. A balance of $379.50 remains (doc. 25, p. 2, n. 3; p. 5). Hancock Whitney states these attorney fees and costs were incurred between August 7, 2024, the date of the foreclosure sale, and August 15, 2024 (Doc. 25-1, p. 4).

C.  **Balance due under the Note**

"A court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). Often, this requires an evidentiary hearing before a court grants a default judgment. See S.E.C. v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005). But an evidentiary hearing is not a per se requirement. Id. at 1232 n.13. No hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." Id. Thus, "the hearing requirement can be satisfied by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it." 2 Steven S. Gensler, Rule 55, Federal Rules of Civil Procedure, Rules and Commentary (2024) (citing S.E.C. v. Smyth, 420 F.3d at 1232 n.13).

Hancock Whitney has provided sufficient evidence to determine the amount owed by Defendants under the Note and the Guaranties, including late fees, accrued interest, and attorneys' fees, expenses, and costs. (Doc. 1-1 (Note); Doc. 1-2 (Guaranties); Doc. 25-1 (Sander

13

Supplemental Declaration)); Doc. 25 (Supplement to the Motion for Summary Judgment)).

In its Supplement, Hancock Whitney addressed the Court's questions regarding the calculation of the amount due (Doc. 24, p. 12, Order on Summary Judgment; Doc. 25, Supplement). Hancock Whitney explained that the inaccurate calculations in the motion for default judgment resulted from "(1) a scrivener's error related to the amount of a foreclosure sale,[4] and (2) a miscommunication related to how foreclosure proceeds were to be applied to the Note." (Doc. 25).

Specifically, The Court sought "clarification as to how the increase" in interest from April 16, 2024 to August 7, 2024, from $58,082.75 to $105,123.59, on the principal balance of $1,345,347.66, was calculated and "how Hancock Whitney arrived at the $411.08 per diem interest rate" on the balance (Doc. 24, p. 12).

Hancock Whitney explained that the "higher per diem recited in the previous declaration, $411.08, results from a 360-day year—$1,345,347 × 11% per annum ÷ 360 days per year ≈ $411.08." (Doc. 25, p. 3). Hancock Whitney explained that the actual "per diem from April 16, 2024 to August 7, 2024 was $405.45, calculated by multiplying the quotient of 11% and 365 by the principal balance of $1,345,347" and that "[a]s of August 7, 2024, the accrued interest on the Note was $103,898.29. This number is the sum of the $58,082.74 interest due on April 16, 2024 and the product of the 113 days between April 16, 2024 and August 7, 2024 and the per diem of $405.45" - $45,815.59 (Doc. 25-1, p. 1, 3).

The Court also stated that "it is not clear how the interest rate did not decrease after the principal owed decreased from $1,345,347.66 to $275,347.66" after the foreclosure sale (Doc.

---

[4] In the initial Declaration, the foreclosure amount was listed as $1,075,000.00 (Doc. 22-1). In the Supplemental Declaration, the amount was $1,070,000.00 (Doc. 25-1).

14

24, p. 12). In the initial Declaration, Sander stated that the foreclosure sale price was $1,075,000.00, that "[a]s of August 15, 2024, the Note's principal balance was $275,347.66 with interest sue of $105,123.58" and that the "Note has accrued and continues to accrue interest at a per diem rate of $411.08" (Doc. 22-1, p. 3).

In the Supplement, Hancock Whitney explains that the foreclosure price was $1,070,000.00 and that after payment of collection costs, accrued late fees, and accrued interest from the foreclosure sale price, and applying the remainder of $925,687.98 to the principal of $1,345,347.00, a balance of $419,659.68 remained (Doc. 25, p. 2; Doc. 25-2, p. 3). Declarant Sander further explained that the per diem interest rate did decrease after the foreclosure sale:

> 15. From August 7, 2024 to October 1, 2024, the per diem was $126.47, calculated as the quotient of 11% and 365 days multiplied by $419,659.68. The Note accrued $6,956.00 in interest in the 55 days between August 7, 2024 and October 1, 2024.
>
> 16. From October 1, 2024 to October 30, 2024, the per diem was $120.72, calculated as the quotient of 10.5% and 365 days multiplied by $419,659.68. Between October 1 and October 30, 2024, the Note accrued $3,501.00 in interest. Thus, the total interest accrued between August 7, 2024 and October 30, 2024 is $10,457.00.

(Doc. 25-1, p. 4).

Ultimately, Hancock Whitney explained that after charges[5] were deducted from the August 7, 2024 foreclosure sale proceeds of $1,070,000.00, the balance due on the principal amount was $419,659.68. As of October 30, 2024, interest had accrued in the amount of $10,547.00, with a per diem rate of $126.47 from August 7, 2024 to October 1, 2024 and a per diem rate of $120.72 from October 1, 2024 to October 30, 2024; and late fees of $2,015.55 had

---

[5] Costs of collection in the amount of $35,038.93 (which included $30,188.93 for attorney's fees and costs), late fees of $5,374.80, and interest of $103,898.29, were deducted from the sale proceeds of $1,070,000.00, leaving a balance of $925,687.98. Deducting that amount from the principal due on the Note - $1,345,347.00 – left a principal balance due of $419,659.68.

15

accumulated (doc. 25, p. 3, 5). The total balance due, as of October 30, 2024, was $432,132.23 plus $379.50 of unreimbursed legal fees, for a total of $432,411.73 (Id.)  Hancock Whitney requests judgment in this amount and pre-judgment interest in the amount of $120.72 per day from October 30, 2024, until the date of this Order (Id.).

### D. Harry's Opportunity to Object

In the Order on the motion for summary judgment, the Court gave Defendant Harry until November 14, 2024, to object to the amount of attorney's fees requested and to object to "Hancock Whitney's addendum explaining how interest was calculated (Doc. 24, p. 15).  To date, Harry has not filed an objection.  Thus, Harry waived his opportunity to object.

### V.    Conclusion

Hancock Whitney's complaint plausibly states a claim for breach of contract, and attorneys' fees, costs, and expenses. Therefore, Hancock Whitney's motion for default judgment is granted.

Default judgment shall be entered against FLC Living, Invinci, and MJO, jointly and severally with Michael A. Harry, in the amount of $432,411.73 plus $120.72 per day in prejudgment interest from October 30, 2024, until the date of this Order.

Final Judgment will be entered by separate document as required by Rule 58(a) of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **6th** day of December 2024.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**